IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00665-PAB-MEH

WILLIAM MONTGOMERY,

    Plaintiff,

v.

ANDREW SAENZ, and
JUDE PEREZ,

    Defendants.
_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff William Montgomery's Second Amended Complaint ("SAC") asserts one claim under 42 U.S.C. § 1983 for malicious prosecution against the two Defendants. Both Defendants now move to dismiss the suit in its entirety for failure to state a claim for relief. I find that Plaintiff does not allege facts that support a malicious prosecution claim under the Fourth Amendment. Therefore, I respectfully recommend that the Motion to Dismiss be **granted**.

## BACKGROUND

    The following are factual allegations made by Plaintiff in the SAC, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    On the evening of February 17, 2016, Plaintiff began standing on a private sidewalk in the Westfield Shopping Center in Westminster, Colorado, holding a cardboard sign that indicated he was homeless and in need of help. SAC ¶¶ 5–6, ECF No. 8. Within four minutes, Westminster Police Officers Andrew Saenz and Jude Perez observed Plaintiff and pulled over their vehicle in order to speak with him. *Id.* ¶ 7. Officer Saenz told Plaintiff, "[Y]ou can't loiter here, and you can't . . . hold your sign up there on the corner, here in the city of Westminster." *Id.* ¶ 8.

Defendants then asked Plaintiff for his identification, but Plaintiff did not quickly comply. *See id.* ¶¶ 9–10. Instead, Plaintiff "attempted to reason" with Defendants. *Id.* ¶ 9. Plaintiff asked Defendants what ordinance they believed he was violating and explained that he researched the relevant property line to ensure he was on private property. *See id.* ¶¶ 9–11. Otherwise, Plaintiff "continued to not concede to Defendants' show of authority . . . ." *Id.* ¶ 10. Officer Perez eventually told Plaintiff that he was "panhandling on a public street" and said he had probable cause to request Plaintiff's identification. *See id.* Plaintiff realized that Defendants "actually thought" the location at issue was a public road. *Id.*

The private drive that Plaintiff occupied resembled the adjacent public street in many respects. *See id.* ¶ 11. It was paved with similar looking asphalt and concrete and was also shaped similarly to the public street. *See id.* Plaintiff concedes, "the only way to way to . . . tell[] the difference between a public road and a private drive is with the use of maps and/or signs." *Id.*

Defendants ultimately arrested Plaintiff without a warrant for violating Westminster, Colo. Code of Ordinances § 9-4-1, *see id.* ¶¶ 17–18, which states:

> (B) It shall be unlawful for any person to solicit employment, business, contributions, or sales . . . from the occupant of any vehicle traveling upon any street or highway when such solicitation or collection either:
>
> > (1) Causes the person performing the activity to enter onto the traveled portion of a street or highway.
>
> > (2) Involves the person performing the activity to be located upon any median area that separates traffic lanes for vehicular travel in opposite directions.

§ 9-4-1(B)(1)–(2). Plaintiff was unable to post bond and spent the next thirty-three days in jail. *Id.* ¶ 20.

At Plaintiff's trial, both Defendants testified that they "observed [Plaintiff] to be in violation of [Westminster's] anti-solicitation ordinance . . . ." *Id.* ¶ 23. After questioning from Plaintiff, both Defendants candidly testified that they never observed Plaintiff step onto the street or occupy the median of a road. *Id.* They also testified it was possible for vehicles exiting the shopping center to observe Plaintiff's requests for assistance and then pull back around if they wished to address him. *Id.* Plaintiff was ultimately acquitted of the charge under the anti-solicitation ordinance but was convicted in the same trial of an obstruction charge. *Id.* ¶¶ 20–21.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)).

3

"The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## **ANALYSIS**

Plaintiff now brings a "single, straightforward Fourth Amendment constitutional claim" under 42 U.S.C. § 1983 for malicious prosecution.[1] Resp. 1, ECF No. 35. Defendants first respond

---

[1] Defendants argue Plaintiff cannot assert a malicious prosecution claim, because he was not seized pursuant to a warrant. Mot. to Dismiss 4, ECF No. 29 ("The Tenth Circuit has consistently held that in order for a claim of malicious prosecution to be cognizable as a civil rights violation, a plaintiff must be seized pursuant to the imposition of legal process." (citing *Margheim v. Buljko*, 855 F.3d 1077, 1085 (10th Cir. 2017)). This assertion is incorrect. *See Wilkins v. DeReyes*, 528 F.3d 790, 798 (10th Cir. 2008) (recognizing a malicious prosecution claim is cognizable when the plaintiff is arrested "without a valid warrant"); *see also Sanchez v. Hartley*, 810 F.3d 750, 757 (10th Cir. 2016) ("[In *Wilkins*] we recognized a cause of action under § 1983 for malicious

4

by asserting they are entitled to qualified immunity. Mot. to Dismiss. 7, ECF No. 29. Qualified immunity protects from litigation a public official whose conduct did not violate clearly established law at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, Plaintiff asserts a Fourth Amendment violation for malicious prosecution, so he must first demonstrate Defendants violated a Fourth Amendment right. "The common law elements of malicious prosecution are the 'starting point' for [a court's] analysis of a § 1983 malicious prosecution claim[]." *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1286 (10th Cir. 2004)). "But 'the ultimate question' in such a case 'is

---

prosecution in violation of the Fourth Amendment for seizures that occur after a warrantless arrest.").

5

whether plaintiff has proven the deprivation of a constitutional right.'" *Id.* (quoting *Novitsky v. City of Aurora*, 491 F.3d 1244, 1257–58 (10th Cir. 2007)).

> The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Novitsky*, 491 F.3d at 1258.

To begin, I note that "pursuing a malicious prosecution claim against a police officer is 'anomalous.'" *Taylor v. Meacham*, 82 F.3d 1556, 1563 n.8 (10th Cir. 1996) (quoting *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J., concurring)). This is because "[t]he principal player in carrying out a prosecution . . . is not police officer but prosecutor." *Albright*, 510 U.S. at 279 n.5 (Ginsburg, J., concurring). Still, "[i]t is conceivable that a wrongful arrest could be the first step towards a malicious prosecution." *Taylor*, 82 F.2d at 1564 (quoting *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)). But the "chain of causation" as it relates to the police officer "is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Id.* (quoting *Reed*, 77 F.3d at 1053).

Ultimately, Plaintiff's suit fails, because it does not allege the fourth element of a malicious prosecution claim—that Defendants acted with malice. *Novitsky*, 491 F.3d at 1258–59 (finding a malicious prosecution claim failed because it did not allege any mistakes by police officers were made with malice). Factual misstatements by police officers are not malicious when they are made "out of negligence or inadvertence." *Id.* at 1258. Rather, malice is shown by alleging an officer made false statements or omitted facts "knowingly or with reckless disregard for the truth."

6

*Taylor*, 82 F.3d at 1563 (finding a Fourth Amendment violation if an officer included false statements or omitted facts knowingly or recklessly); *see Novitsky*, 491 F.3d at 1258 (finding malice when a police officer's false statement was intentional); *Pierce*, 359 F.3d at 1292 (recognizing a malicious prosecution is valid against an officer who "conceal[s] and misrepresents[s] material facts").

Here, Plaintiff does not allege that any action or mistake on the part of Defendants was taken maliciously. First, Plaintiff specifically alleges that Defendants "actually thought the private drive to which Plaintiff had been standing on was a public road . . . ." SAC ¶ 10. Plaintiff also specifically alleges facts that would make this mistake reasonable. For example, Plaintiff alleges that the private drive was "paved using similar-looking asphalt as that used in the production of public roads, and its private sidewalks, medians, and/or curbs may have likewise been shaped using similar-looking concrete . . . ." *Id.* ¶ 11. Thus Plaintiff's own allegations suggest any mistake by Defendants regarding whether Plaintiff was in violation of Westminster ordinance § 9-4-1 was "out of negligence or inadvertence." *Novitsky*, 491 F.3d at 1258.

Further, Plaintiff alleges both officers testified truthfully and candidly about the events that preceded his arrest. *See* SAC ¶ 23. Defendants both testified that they never observed Plaintiff step onto the traveled portion of a street or occupy the median of a road. *Id.* These admissions contributed to Plaintiff's eventual acquittal on the charge. *See id.* This candor further demonstrates that Defendants' conduct was not malicious. *Novitsky*, 491 F.3d at 1258 (noting that an officer's truthful testimony that eventually led to the suppression of evidence and the government dismissing an indictment against a criminal defendant suggested that the officer did not act maliciously).

7

These allegations bear little resemblance to those instances in which the Tenth Circuit has found that a public official acted with malice. For example, in *Pierce*, a forensic chemist was alleged to have "fabricated inculpatory evidence" and also "concealed" exculpatory evidence that a criminal defendant's hair samples were inconsistent with the samples collected at the crime scene. 359 F.3d at 1282. The plaintiff in the ensuing civil action alleged that the chemist "repeatedly communicated these false and fraudulent findings to police and the district attorney . . . ." *Id.* at 1291. The Tenth Circuit noted that these allegations were sufficient to show the chemist "maliciously withheld exculpatory evidence." *Id.* at 1293.

Another example lies in *Sanchez v. Hartley*, 810 F.3d 750 (10th Cir. 2016). There, a rape victim told police officers that her attacker "was roughly 40 years old, weighed about 190 pounds, had no tattoos, and had brown hair parted down the middle." 810 F.3d at 756. Nevertheless, the officers obtained a confession from and ultimately charged an individual who "was only 18 years old, weighed only about 130 pounds, had prominently displayed tattoos on both arms, and had buzz-cut red hair." *Id.* Further, the person charged had "pronounced cognitive and developmental disabilities and IQ test scores in the 60s and 70s." *Id.* The Tenth Circuit found these allegations sufficient to allege that the officers "either knew the confession was untrue or acted in reckless disregard of the truth." *Id.*

Plaintiff strongly argues that the SAC sufficiently alleges that Defendants acted with malice, but these arguments are unpersuasive. Primarily, Plaintiff relies on the allegation that Defendants told others they saw him violate the anti-solicitation ordinance as an example of a false statement. *See* SAC ¶¶ 36–37 ("Defendant Officers knew or should have known that claiming they saw Plaintiff violate their city's public-road[]only anti-solicitation ordinance would provide false evidence that would result in his wrongful conviction . . . ."). But as I discussed above, to

8

the extent Plaintiff was ultimately vindicated on this point, his own allegations indicate Defendants' mistakes were inadvertent or merely negligent. They do not resemble the knowing or reckless conduct of the officials in *Pierce* and *Sanchez*. Otherwise, Plaintiff relies on his allegations that he offered to show Defendants maps that would have demonstrated he was holding his sign on private property. Resp. 15 ("Plaintiff had offered them and/or attempted to review with them the relevant maps that he knew existed and which would have conclusively substantiated the private property nature of the private driveway . . . ."). However, Plaintiff cites no authority that states a police officer must collaborate with an individual whom he suspects of violating a law to ensure that the belief is properly founded. Plaintiff does not allege that Defendants knew Plaintiff was on private property, and his factual allegations indicate that any mistake on their part was inadvertent. Despite Plaintiff's fervent protestations, the SAC simply does not contain any factual allegation that plausibly suggests Defendants acted with malice during Plaintiff's prosecution. As such, Plaintiff's Forth Amendment claim for malicious prosecution must fail.

## **CONCLUSION**

Plaintiff does not allege a plausible malicious prosecution claim against Defendants, because he does not allege that they acted with malice during the events of his prosecution under Westminster's anti-solicitation ordinance. Therefore, I respectfully RECOMMEND that Defendants' Motion to Dismiss [filed September 26, 2018; ECF No. 29] be **GRANTED**.[3]

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party

Respectfully submitted this 17th day of December, 2018, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).